[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 90 
This is an appeal by the defendant from a judgment of conviction entered in the Monmouth County Court on the charge that he willfully and unlawfully made "what is commonly known as a book, upon the running of horses, mares and geldings".
On August 16, 1948, between 12:30 and 2 p.m., the Monmouth County Prosecutor, in the company of others, raided premises owned by the defendant's sister and located at 427 Cookman Avenue, Asbury Park. There was a confectionary store on the ground floor and in the rear there was a storage room which had, at one time, been used for bookmaking resulting in an earlier conviction of the defendant. The Prosecutor and his party proceeded from this storage room to the cellar and there observed the defendant sitting at a small table. A telephone and pads were on the table and five of the pads bore notations of horse racing bets in the defendant's handwriting. The telephone was attached to a wire which was *Page 91 
traced to premises located at 409 Cookman Avenue, occupied by the defendant's sister, her husband and the defendant's mother.
On the witness stand the defendant admitted that he was seated at the table and that the five pads bore notations in his handwriting of bets which had been received over the telephone. Nevertheless, he denied that he was engaged in bookmaking stating that he had his hair cut at a nearby barber shop and was waiting for some friends to pick him up to play golf and that he then decided to go to his sister's premises across the street to see whether a pump in the cellar had been repaired. He further stated that while in the cellar he was surprised to see the telephone there and that when it rang he answered it noting on one of the pads "some horses" which the caller listed. His testimony was that "after this fellow hung up, I wanted to see what this business was all about. I didn't want anything going on down there, because if there was, there was so many stool pigeons around, I was the one to be blamed about it. So I want to find out what it was all about. So, before I had a chance the phone rang again, and I was about to write down what they had." He admitted that he had listed the names of horses telephoned in by five separate callers and estimated that he had been in the cellar about ten or fifteen minutes before the Prosecutor arrived.
After the taking of testimony was completed the court charged the jury which returned a verdict of guilty. The defendant's appeal rests on alleged errors in evidential rulings by the trial court and in its refusal to charge as requested. After the defendant had testified, he produced the barber to corroborate that he had been in the barber shop until just a few minutes before the raid. The barber testifed that the defendant came in about twelve o'clock for a haircut but the trial court sustained an objection to a further question as to what time he had finished on the ground that it was immaterial. The defendant also called a witness to corroborate his statement that he had a golf engagement and this likewise was excluded because of immateriality. The State points out that it never disputed that the defendant entered the cellar shortly before the *Page 92 
raid, or that he had a golfing engagement. Under the circumstances it was within the trial court's discretion to exclude the proferred testimony and, in any event, it appears from the entire record of the proceedings that the defendant did not thereby suffer "manifest wrong or injury". See Rules 1:2-19 and 4:2-6.
In the course of his cross-examination the defendant stated that he did not tell any member of the Prosecutor's party that somebody else was operating the book and that it was not his business, saying "he didn't ask me". He was then asked, "Why didn't you tell them?" and after objection to this question was overruled he repeated that he wasn't asked and added, "No conversation at all took place." We do not agree with the contention that this question was improperly permitted. Unless the defendant's silence was explained, the inference might well be drawn that if the bookmaking was not being engaged in by him but by others, he then would have so expressed himself affirmatively. The question afforded to the defendant an opportunity to remove this inference and was not harmful to him. In the light of the other testimony in the case it was wholly permissible cross-examination. Cf. State v. Bassone,109 N.J.L. 176, 182 (E. A. 1932).
The defendant's final contention is that the trial court erred in refusing the following request to charge:
"If you find that there are discrepancies in the testimony of the witnesses produced by the prosecution, it is for you to determine whether or not those discrepancies raise in your mind a reasonable doubt as to the guilt of Mr. Palmieri, and if they do, the law requires that your verdict be not guilty."
The record does not disclose any discrepancies among the State's witnesses in any material respect and the trial court did charge that the defendant was entitled to any reasonable doubt arising from the evidence and that the burden was upon the State to prove every material element of the crime beyond a reasonable doubt. The charge sufficiently expressed the principle applicable under the testimony and the refusal to charge the requested language was not improper and caused no harm. *Page 93 Cf. State v. Fischer, 97 N.J.L. 34 (Sup.Ct. 1922) aff'd98 N.J.L. 293 (E. A. 1922).
The judgment below is affirmed.